CANTRELL REALTY COMPANY v. Elbert W.
LISEMBY and Betty Sue Lisemby

5-5510                                    465 S. W. 2d 121

Opinion delivered April 5, 1971

*Bridges, Young, Matthews & Davis,* for appellant.

*John W. Elrod,* for appellees.

FRANK HOLT, Justice. This action was brought by appellant to recover a real estate brokerage commission from appellees. After presentation of oral and documentary evidence by both parties, the trial court, sitting as a jury, found that appellant was not entitled to a commission. From the judgment of the court dismissing the complaint, appellant brings this appeal.

On April 10, 1969, appellees entered into a written "exclusive listing" contract with appellant. Under the terms of this contract, appellant was to have the exclusive right from April 10, 1969, through September 10, 1969, to sell appellees' house. If the house were sold within that period, whether by appellant or by any other party, including appellees, appellant would be entitled, under the contract, to a broker's commission of 6% of the gross amount of the sale price. Since appellees insisted upon a net receipt of no less than $14,000, it was agreed that appellant should set the selling price at $15,000 in order to accommodate its commission and still allow appellees their desired return. The contract further provided that appellant would also be entitled to a commission if the house were sold after the 150-day listing period as a result of information given by or obtained through appellant.

Sometime in July 1969, Malon D. Harris contacted appellant as a prospective purchaser, and appellant en-

deavored to sell him appellees' house. Harris declined to purchase the house, and no other buyer was obtained by appellant during the listing period. Appellees advised appellant on September 8, 1969, that they did not intend to renew the listing contract and, on September 26, 1969, transferred the listed property to Harris for $14,000. Upon learning of this sale, appellant demanded its commission. Appellees' refusal to pay resulted in the present litigation.

In its first point for reversal, appellant contends that the trial court erred by not finding that appellees effectively sold their house during the listing period, thereby incurring liability for the commission. In accordance with our well established rule, on appeal we review the evidence in the light most favorable to appellees to ascertain if there is any substantial evidence to support the finding of the trial court, and, if so, then we must affirm. *Pearrow* v. *Huntsman,* 248 Ark. 1146, 455 S. W. 2d 128 (1970); *Zullo* v. *Alcoatings, Inc.,* 237 Ark. 511, 374 S. W. 2d 188 (1964). There is testimony that Harris first approached appellees about purchasing their house without any knowledge of the listing with appellant; appellees then referred Harris to appellant and advised him he would have to buy the house through appellant. On a later occasion, Harris asked appellees if he could buy the house for $14,000. Appellee Elbert Lisemby testified: "I told him I could not sell it to him for any price as long as [appellant] had it." Lisemby acknowledged that he told Harris he would sell him the house for $14,000 if appellant did not sell it.

Appellant now argues that this was an agreement which constituted a binding condition contract. However, according to Harris, this conversation was not understood to be a binding agreement. He stated that appellee Lisemby "said he couldn't hold it for me, but, of course, if [appellant] hadn't sold it before they were out of it that he would sell it to me." Likewise, Lisemby did not consider this as a binding contract. He testified that he was uncertain as of September 10, 1969 (the date of expiration of the listing contract) whether Harris would buy the house. It was not until September 26,

1969, that Lisemby knew for certain that Harris could or would buy his house because it was only then that Harris was able to make the $500 down payment. According to Lisemby and Harris, there was no enforceable agreement until that date. We cannot say there was no substantial evidence to support the finding that this asserted agreement was not intended as a binding sales contract.

Next it is asserted for reversal that appellees' conduct during the listing period was intended to, and did, improperly deprive appellant of the sale to Harris. Appellant contends there is evidence that appellees and Harris secretly negotiated with a federal loan agency during the listing period to secure financing; that when Lisemby did not renew the listing he made misleading statements to the effect that he had decided to retain the property and rent it; and that the transfer of the property after the listing period constituted a breach of the listing contract. But, once again there is substantial evidence controverting these contentions. Appellee Lisemby testified that he wanted appellant to sell the property and did not discourage anyone from buying it; that he never suggested to Harris that by waiting he could beat appellant out of its commission; that although he had told Harris, whom he had sent to appellant, that he would sell to him for $14,000, he would not do so until appellant had his full time; that Harris indicated that he was unable to finance the house at $15,000; and that they agreed to sell the house to Harris only after he was convinced that Harris would not buy it at $15,000. Although other evidence may be construed to indicate that appellees did not act in good faith toward appellant, nonetheless, when we view the evidence in the light most favorable to the appellees, we cannot say there is no substantial evidence to support an opposite conclusion by the trial court.

In its third and final point for reversal, appellant argues that the sale to Harris, even assuming it occurred after the listing period, resulted from the efforts of appellant during the listing period. Appellant points out that "there was substantial proof during the trial that the sale made to Harris was the product of [appellant's]

advertisements and efforts." Even though this proof does exist, it is not controlling here on appeal. As previously indicated, on appeal we must affirm if there is any substantial evidence to support the findings of the trial court, although there is also substantial evidence to the contrary.

The president of appellant company, Jerry Cantrell, testified that: He ran ads concerning the property in a local newspaper; he placed a "for sale" sign in appellees' yard; he had met with Harris on three occasions in an effort to sell him the house, but that Harris stated that he had decided not to buy the house and preferred to rent; Harris had referred to the ads when he contacted him; he had suggested methods of financing to Harris when he said that he was unable to "raise the money;" and after that, appellant did not consider Harris "a good prospect." Harris testified that he first learned of the house being for sale from appellee Elbert Lisemby, an acquaintance, who told him that he would have to buy from Cantrell; that he only met twice with Cantrell and that the other contacts were by telephone; that he did not mention any ad to Cantrell; and that he did not buy the house as a result of any efforts of appellant. The testimony is conflicting and reconciling conflicts in the testimony and weighing the evidence are within the exclusive province of the trial court. We cannot say there is no substantial evidence that the sale was made independent of appellant's efforts.

Affirmed.

BYRD, J., dissents.